UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID DELUCA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>    Defendant. | Case No.17-cv-00034-EDL<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DECERTIFY**<br><br>Re: Dkt. No. 166 |

Defendant Farmers Insurance Exchange ("Defendant") moved to decertify the class**,** arguing that the trial plan proposed by Plaintiffs David DeLuca and Barry Francis, individual and on behalf of other similarly situated ("Plaintiffs") is flawed. The Court held a hearing on Defendant's motion on August 27, 2019. Having considered the parties' motion and opposition papers, supporting declarations and other documents, as well as the arguments made at the hearing, for the reasons set forth below, the Court DENIES Defendant's motion. However, the Court agrees that the trial plan should be improved to be somewhat more representative, albeit not so as to achieve the inapplicable standard of statistical significance as to damages. Precisely how is premature at this juncture when additional discovery is pending, including deposition of class members who did not opt-in to the FSLA collective action.

**I.   FACTUAL BACKGROUND**

Plaintiffs seek unpaid overtime wages for themselves and a group of current and former special investigators. On January 4, 2017, Plaintiffs David Deluca and Barry Francis filed this class and collective action in the Northern District of California alleging wage-related claims against Defendant. The lawsuit was styled as a Rule 23 class action on behalf of California investigators and a nationwide collective action under the FLSA on behalf of special investigators throughout the United States. Dkt. No. 1. Plaintiffs challenge their status as "exempt"

1   administrative employees under the FLSA and California state law and contend they should have
2   been compensated for all overtime hours worked.
3       This case covers a total of 78 individuals. On February 27, 2018, this Court certified the
4   California Rule 23 class for unpaid overtime and second meal period violations. Dkt. No. 87. The
5   California Rule 23 Class consists of 57 individuals, seventeen of whom also affirmatively opted
6   into the FLSA collective action part of this litigation. Dkt. No. 156 (joint statement). In total,
7   there are 38 Named and Opt-in Plaintiffs who are part of the FLSA collective, leaving 40 absent
8   California Class Members who did not opt into the FLSA collective action. Id. Of the total of 78
9   investigators, 43 remain employed by Defendant and 35 investigators have ended their
10  employment.
11      On May 15, 2019, the Court granted Plaintiffs' motion for summary judgment on the
12  administrative exemption, finding Defendant had misclassified special investigators under both the
13  FLSA and California state law during the relevant time period. Dkt. No. 152. However, the Court
14  declined to grant summary judgment in favor of either party on Plaintiffs' claims for willfulness,
15  liquidated damages, waiting time penalties, and second meal period violations. Id. In response to
16  Defendant's request that Plaintiffs set forth a trial plan explaining how the remaining disputed
17  issues can be tried manageably with collective evidence, the Court ordered Plaintiffs to propose
18  their trial plan for the remaining issues and required Defendant to provide its response to
19  Plaintiffs' proposal in the parties' joint statement prior to the July 2, 2019 case management
20  conference. Id.
21      On June 13, 2019, Plaintiffs' counsel provided Defendant's counsel with the names of
22  twenty potential testifying trial witnesses whom they might call during Plaintiffs' case in chief.
23  See Declaration of Ryan McCoy ("McCoy Decl."), at ¶2, Ex. 1. All proposed witnesses are either
24  Named or Opt-in Plaintiffs to this litigation. None of the proposed witnesses are part of the 40
25  absent class members from the Rule 23 class.
26      On June 19, 2019, Plaintiffs' counsel provided Defendant with their proposed trial plan.
27  Plaintiffs propose using two groups of testifying Opt-in Plaintiffs from the same sample of twenty
28  trial witnesses: a) "testimony from approximately eight of the 57 California Class Members to

establish the average number of second meal periods missed per workweek," and b) "testimony from approximately 12 Opt-in Plaintiffs." See Dkt. No. 156-1 (Plaintiffs' Proposed Trial Plan). Defendant complained that no explanation was provided of the methodology behind these samples, other than Plaintiffs' cursory description that class counsel "selected [the witnesses] to represent a range of geographic areas and levels of experience." Id.

In connection with the prior case management conference, Defendant filed a response to Plaintiffs' proposed trial plan along with the declaration of Defendant's expert Daniel Slottje ("Slottje Decl."), arguing the plan is based on the non-random, cherry-picked testimony of only Named or Opt-in Plaintiffs, ignoring the 40 absent class members who make up over half of the population. Dkt. 156-2. Although this matter was set for trial, trial dates have been vacated pending the anticipated reassignment. Accordingly, discovery is continuing and there is no current deadline for submission of trial exhibits or trial witnesses.

At the time of filing its motion to decertify, Defendant had deposed nine Opt-in Plaintiffs, of whom five are Rule 23 California Class members (Francis, Deluca, Daszco, O'Brien, Stewart), and four of whom are not (Reyes, Ritzema, Mitchell, Grimes). Declaration of Daniel Brome ("Brome Decl.") at ¶ 3. The parties were working to schedule additional opt-in depositions. Defendant conveyed its intention to take the five depositions of the absent class members as permitted by the Court, see Dkt. No. 169, likely followed by additional opt-in class member depositions.

## II. LEGAL STANDARD

### A. Decertification under Rule 23

A plaintiff seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rules 23(a) -- numerosity, commonality, typicality, and adequacy -- and at least one of the three requirements under Rule 23(b) are satisfied. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 979-80 (9th Cir. 2011). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A court may decertify a class at any time. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982); see also Duran v. U.S. Bank, 59 Cal. 4th 1, 29 (2014) ("Trial courts also have the obligation to decertify a class action if individual issues prove unmanageable"). "In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." Cruz v. Dollar Tree Stores, Inc., 2011 WL 2682967, at *3 (N.D. Cal. July 8, 2011). The court must apply "a rigorous analysis" as to both Rule 23(a) and Rule 23(b). Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013); Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011); Marlo v. UPS, 639 F. 3d 942, 946 (9th Cir. 2011) (affirming order decertifying class). Rigorous analysis entails "considerations…enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Dukes, 131 S. Ct. at 2551-52.

Decertification is proper when the court determines that the plaintiffs have not presented a viable plan to try issues of liability and damages. Stiller v. Costco Wholesale Corp., 298 F.R.D. 611 (S.D. Cal. 2014); Marlo v. United Parcel Serv., Inc., 251 F.R.D. 476, 480 (C.D. Cal. 2008) (decertifying class because plaintiff relied on purportedly common evidence that was "neither reliable nor representative of the class"), aff'd, 639 F.3d 942 (9th Cir. 2011) (decision to decertify did not constitute abuse of discretion). Decertification also is proper where a trial would turn into individualized inquiries and mini-trials that would render the trial unmanageable. Marlo, 251 F.R.D. at 486. However, "damages determinations are individual in nearly all wage-and-hour class actions . . . the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." Leyva v. Medline Indus. Inc., 716 F.3d 510, 513-14 (9th Cir. 2013) (citations omitted); accord Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1167-68 (9th Cir. 2014) (affirming certification of off-the-clock overtime case, noting "[s]o long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification"); see also Williams v. Superior Court, 221 Cal. App. 4th 1353, 1370 (2013), as modified (Dec. 24, 2013) (reversing decertification of off the clock claims, concluding "[i]t may be true that some adjusters never worked off the clock, and such adjusters were thus not injured by

4

Allstate's practice of adjusters working off the clock. But the existence of individuality as to damages does not defeat class certification."); Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1054 (2012) (Werdegar, J., concurring) ("In almost every class action, factual determinations [of damages] ... to individual class members must be made. Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution.  Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.") (internal citations and quotations omitted)).

### 1.  **Adequacy of a Trial Plan**

Plaintiffs must present a plan to conduct a class trial. Zinser v. Accufix Research Inst., 253 F.3d 1180, 1189 (9th Cir. 2001), quoting Chin v. Chrysler Corp., 182 F.R.D. 448, 454 (D.N.J. 1998) (plaintiff "bears the burden of demonstrating a suitable and realistic plan for trial of the class claims").  Absent an acceptable trial plan, the court should decertify.  Valentino v. Carter-Wallace, Inc., 97 F. 3d 1227, 1234 (9th Cir. 1996) (decertifying class because plaintiff made no showing "of how the class trial could be conducted"); Espenscheid v. DirectSat USA, LLC, 2011 WL 2009967, at *17 (W.D. WI, May 23, 2011) (decertifying class because plaintiffs failed to "propos[e] a trial plan that would lead to a fair result"), aff'd, 705 F. 3d 770 (7th Cir. 2013).

### B.  **Decertification under FLSA**

District courts typically follow a two-step approach to certification of FLSA cases.  The first stage applies a lenient test to determine whether, at a preliminary level, the group is similarly situated, and notice should be distributed.  The second stage analysis applies "at or after the close of relevant discovery." Campbell v. City of Los Angeles, 903 F.3d 1090, 1113-17 (9th Cir. 2018). If decertification is granted, the "opt-in plaintiffs are dismissed without prejudice to the merits of their individual claims, and the original plaintiff is left to proceed alone.  If the motion for decertification is denied, the collective proceeds toward trial, at least on the questions justifying collective treatment." Id. at 1110 (citation omitted).  The FLSA "is a remedial statute with broad worker-protective aims," and "the collective action mechanism is . . . tailored specifically to vindicating federal labor rights." Id. at 1112-13.

On a decertification motion, "the FLSA does not give district courts discretion to reject

collectives that meet the statute's few, enumerated requirements." Id. at 1115. Instead, "the FLSA gives party plaintiffs the power to decide in what form they wish to proceed, for 'Congress has stated its policy that [party] plaintiffs should have the opportunity to proceed collectively.'" Id. (citing Hoffmann-La Roche v. Sperling, 493 U.S. 165, 170 (1989)). If that "right to choose collective litigation has any force, 'procedural considerations' must mean more than inconvenience, from the court's or defendant's viewpoint, of the party plaintiffs' choice." Campbell, 903 F.3d at 1116. "[D]ecertification of a collective action of otherwise similarly situated plaintiffs cannot be permitted unless the collective mechanism is truly infeasible," since "the theoretical alternative to collective litigation is the possible proliferation if individual actions . . . litigated seriatim." Id. On decertification, district courts should consider whether the opt-ins are similarly "alike with regard to some material aspect of their litigation." Id. at 1114. "If the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." Id. The fact that plaintiffs "worked different hours and claimed overtime of different amounts" does not warrant decertification, since "those distinctions go to the individualized calculation of damages or the individualized application of defenses." Id. at 1116. "Individualized damages amounts cannot defeat collective treatment" under either Rule 23 or "the more forgiving standard of section 216(b)." Id. at 1117 (citing Leyva, 716 F.3d at 514). In the wage-and-hour context, individualized damages are to be expected, and are not inconsistent with collective treatment; rather, "individualized calculations of work hours may readily be addressed with any of the practices developed to deal with Rule 23 facing similar issues." Id. at 1116.

**III. DISCUSSION**

    **A. Representative Testimony**

Plaintiffs propose to establish the number of overtime hours worked for Plaintiffs and the Rule 23 California Class based on representative testimony from approximately 12 Opt-in Plaintiffs, selected to represent a range of geographic areas, dates of employment, and levels of experience. Based on this testimony, Plaintiffs argue that the jury may determine an average amount of overtime work and number of missed meal periods for the non-testifying Plaintiffs and

Rule 23 California Class members. Where the employer is required to maintain accurate time records (see 29 C.F.R. § 516.2(a); Cal. Labor Code §§ 226, 1174; Wage Order 4-2001, § 7) and fails to do so, the United States Supreme Court has determined that plaintiffs need not show the amount of unpaid work with precision, but only as a matter of just and reasonable inference. Anderson v. Mt. Clemens Pottery, 328 U.S. 680, 687-88 (1946). Because this case was certified as a class and collective, it may proceed through representative proof. Monroe v. FTS USA, LLC, 860 F.3d 389, 408-09 (6th Cir. 2017) (collecting circuit cases from First, Second, Third, Fourth, Eighth and Ninth Circuits that "recognize the propriety of using representative testimony to establish a pattern of violations that include similarly situated employees who did not testify.")

The parties agree that this case can be tried using representative testimony and that the testifying plaintiffs' hours can be extrapolated to non-testifying Plaintiffs and class members. However, Defendant argues that representative testimony must use sound statistical sampling methodology. Plaintiffs argue that courts look to the quality of the evidence, not just the quantity, to determine whether the evidence is representative, and statistical significance is not required to prove damages. This is the fundamental disagreement between the parties.

### 1. Overtime Hours Worked as a Matter of Just and Reasonable Inference

In Mt. Clemens, the Supreme Court held:

> Where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.

328 U.S. at 687-88; see also Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1047 (2016) ("Instead of punishing 'the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work,' the Court held 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly

7

1  compensated and if he produces sufficient evidence to show the amount and extent of that work as
2  a matter of just and reasonable inference.'") (quoting Mt. Clemens, 328 U.S. at 687).  Where an
3  employer cannot provide accurate time records, "it is the duty of the trier of fact to draw whatever
4  reasonable inferences can be drawn from the employee's evidence" as to the amount of overtime
5  hours worked.  Mt. Clemens, 328 U.S. at 693.

6        The Mt. Clemens standard, recently reaffirmed by the United States Supreme Court in
7  Tyson, controls here because it is undisputed that Defendant does not have records of special
8  investigators' hours worked.  As a result, the parties are confronting "an evidentiary gap created
9  by the employer's failure to keep adequate records."  Tyson, 136 S. Ct. at 1047 (citing Mt.
10 Clemens, 328 U.S. 687).  To fill that evidentiary gap, "the initial burden is on the employee, [but]
11 that burden is a minimal one."  Sec'y of Labor v. DeSisto, 929 F.2d 789, 792 (1st Cir. 1991).
12 "Where the employer has failed to keep adequate employment records, it pays for that failure at
13 trial by bearing the lion's share of the proof."  Id.  Furthermore, a case that was certified as a class
14 and collective may proceed through representative proof.  Monroe v. FTS USA, LLC, 860 F.3d
15 389, 408-09 (6th Cir. 2017).

### 2. Requirement of Statistical Principles to Establish Representativeness

17       Defendant argues that the Supreme Court recently cautioned that Mt. Clemens should not
18 be understood to mean "all inferences drawn from representative evidence in an FLSA case are
19 'just and reasonable.'"  Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1048 (2016).
20 "Representative evidence that is statistically inadequate or based on implausible assumptions
21 could not lead to a fair or accurate estimate of the uncompensated hours an employee has
22 worked."  Id. at 1048-49.[1]  Defendant argues that "representativeness" is a term with a defined
23 meaning in the context of statistical sampling:

> Sampling is a methodology based on inferential statistics and probability
> theory.  The essence of the science of inferential statistics is that one may
> confidently draw inferences about the whole from a representative sample
> of the whole.  Whether such inferences are supportable, however, depends
> on how representative the sample is.  Inferences from the part to the whole

---

[1] Defendant appears to ignore the use of "or."

8

are justified only when the sample is representative.

Duran, 59 Cal. 4th at 38 (internal quotations and citations omitted); citing In re Chevron U.S.A., Inc., 109 F. 3d 1016, 1019-1020 (5th Cir. 1997) ("sample must be a randomly selected one of sufficient size so as to achieve statistical significance to the desired level of confidence in the result obtained. Such samples are selected by the application of the science of inferential statistics. The essence of the science of inferential statistics is that one may confidently draw inferences about the whole from a representative sample of the whole…").  Defendant also claims that the sample size must be determined using a statistic approach by first selecting a desired confidence level, such as a 95% confidence level.  Slottje Decl., ¶¶ 20-21.

Tyson does not require Plaintiffs to apply statistical principles to ensure representativity. Reading Tyson to require expert statistical modeling would run afoul of Mt. Clemens and subsequent case law.  The only appellate court to have interpreted Tyson has rejected the argument that statistical evidence is required based on the Supreme Court's statement that representative evidence that is "statistically inadequate or based on implausible assumptions" could not be used to draw "just and reasonable" inferences about the number of uncompensated hours an employee worked.  Monroe v. FTS USA, LLC, 860 F.3d 389, 401 (6th Cir. 2017), cert. denied, 138 S. Ct. 980, 200 L. Ed. 2d 248 (2018).

In Monroe, the Sixth Circuit explained that "Tyson does not impose [a requirement that the plaintiffs present a statistical study].  The Court's statement about statistical adequacy was made in the context of the admissibility of representative evidence."  860 F.3d at 401.  The Monroe court further acknowledged that "Tyson did not discuss expert statistical studies because they are the only way a plaintiff may prove" his claim by representative evidence under the Act, "but because those plaintiffs offered such a study."  Id.  Instead, Monroe stated that "the collective-action framework presumes that similarly situated employees are representative of each other and have the ability to proceed to trial collectively" and "[f]or our purposes when assessing the sufficiency of evidence, 'the only issue we must squarely decide is whether there was legally sufficient evidence—representative, direct, circumstantial, in-person, by deposition or otherwise."  Id. (citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1280 (11th Cir. 2008)).  The court

9

noted that the plaintiffs had presented sufficient evidence in the form of testimony from representative technicians along with "good old-fashioned direct evidence." Monroe, 860 F.3d at 401.

The Sixth Circuit in Pierce stated:

> Wyndham argues that the plaintiffs did not show that the testifying employees were representative of the non-testifying employees. It points to the varying ways in which employees testified that Wyndham implemented its no-overtime-pay policy and to the differences in hours employees said they worked and wages they earned. Wyndham argues that, without expert testimony to show that "each class member could have relied on that sample to establish liability if he or she had brought an individual action," Tyson, 136 S.Ct. 1036, the district court erred in relying on the representative sample in this case. But Monroe rejected the same argument, explaining that "Tyson did not discuss expert statistical studies because they are the only way a plaintiff may prove" his claim by representative evidence under the Act. Monroe, 860 F.3d at 401.

Pierce v. Wyndham Vacation Resorts, Inc., 922 F.3d 741, 748-49 (6th Cir. 2019). California courts have also held "there is no requirement that to establish a Mt. Clemens pattern or practice, testimony must refer to all non-testifying employees . . . Courts have frequently granted back wages under the FLSA to non-testifying employees based upon the representative testimony of a small percentage of the employees. The requirement is only that the testimony be fairly representational." See Bell v. Farmers Ins. Exch., 115 Cal. App. 4th 715, 747 (2004) (citing Donovan v. Bel–Loc Diner, Inc., 780 F.2d 1113 (4th Cir. 1985)). Thus, the standard is "just and reasonable inference" and not mathematical certainty and trial can proceed on a representative basis. E.g., Clark v. Centene Co. of Texas, L.P., 104 F. Supp. 3d 813, 830-31 (W.D. Tex. 2015) (six testifying witnesses sufficient to establish a prima facie case on the amount of overtime worked by twenty non-testifying witnesses). Furthermore, there is no rigid requirement that the number of Plaintiffs and absent class members who testify must meet the margin of error threshold set forth under statistical principles.

Defendant argues that Monroe is inapplicable because there the parties had agreed to a representative sample before trial, whereas here Defendant contests the representativeness of Plaintiffs' proposed sample. However, even in Monroe, the parties did not choose the sample

based on statistical principles. Instead, plaintiffs chose 40 opt-in plaintiffs and defendant chose 10. Monroe, 860 F.3d at 395 (6th Cir. 2017). In addition, after discovery, the defendant objected to the use of representative proof at trial. Id. at 410. The court rejected defendant's objection.

Defendant relies on Espenscheid v. DirectSat USA, LLC, 705 F.3d 770 (7th Cir. 2013). In Espenscheid, a case alleging off the clock work, the Seventh Circuit rejected a proposal to extrapolate the experiences of forty-two "representative" witnesses to a class of 2,341. As explained by Judge Posner, "[c]lass counsel has not explained in his briefs, and was unable to explain to us at oral argument though pressed repeatedly, how these 'representatives' were chosen—whether for example, they were volunteers, or perhaps selected by class counsel after exhaustive interviews and hand-picked to magnify the damages sought by the class. There is no suggestion that the sampling methods used in statistical analysis were employed to create a random sample of class members to be witnesses …." Espenscheid, 705 F. 3d at 774. Additionally, the court held that the "experience of a small, unrepresentative sample" "can't support an inference about the work time of thousands of workers." Id. at 775.

Espenscheid is distinguishable because that case involved a significantly larger class. The district court in Espenscheid created twelve different subclasses (three under the FLSA and nine under Rule 23 for Wisconsin, Minnesota, and Pennsylvania state law claims) because of "divergent testimony, distinct theories of liability, [or] unique employment environments and experiences." Espenscheid v. DirectSat USA, LLC, 2011 WL 2009967, at *5 (W.D. Wisc. May 23, 2011). By contrast, this case does not involve "divergent testimony, distinct theories of liability, [or] unique employment environments and experiences." Plaintiffs' proposal to present testimony from twelve Plaintiffs (15% of the total population of 78) is also distinct from Espenscheid, in which the plaintiffs proposed to present testimony from 42 out of 2,341 – less than 2%. Additionally, Espenscheid was litigated with a focus on a multitude of different tasks for which the plaintiffs claimed they were not paid. 2011 WL 2009967, at *2. Many of these tasks were paid on a piece-rate basis rather than a fixed hourly rate. Espenscheid, 705 F. 3d at 772-73. This case is about the common claim asserted by each and every Plaintiff—that Defendant failed to compensate Plaintiffs for all overtime hours worked in violation of the FLSA and California

11

law.

The Seventh Circuit did not hold that individualized damages issues prohibited a class trial. It instead merely affirmed, under an abuse of discretion standard, the district court's decision to manage trial by decertifying the class after the plaintiffs failed to present any litigation plan to the district court regarding damages on a class-wide basis when repeatedly asked to do so. 705 F.3d at 776. Additionally, Espenscheid did not hold that statistical methodology is the only way to create a representative sample.

Here, there is no way to reconstruct Plaintiffs' hours without their good-faith estimates endorsed by Mt. Clemens because Defendant failed to keep time-records, and there is no electronic data that can serve as a proxy to assist in determining hours. Therefore, under Mt. Clemens, Plaintiffs may provide testimony describing their average hours worked. Further, under Monroe, Plaintiffs may proceed through representative proof. Statistical analysis is just one way that a class may offer proof. See Brinker, 53 Cal. 4th at 1054 (Werdegar, J., concurring) (noting that "[r]epresentative testimony, surveys, and statistical analysis," as distinct options, "are all available as tools to render manageable determinations of the extent of liability."). Plaintiffs may proceed so long as the testimony is actually representative.

### 3. Representativeness of the Sample

"[T]here is no magic formula for the number or percentage of plaintiffs who must testify," and instead, it "is axiomatic that the weight to be accorded evidence is a function not of quantity but of quality." Takacs v. Hahn Auto. Corp., 1999 WL 33127976, at *2 (S.D. Ohio Jan. 25, 1999) (citing DeSisto, 929 F.2d at 793 ("'the adequacy of the representative testimony necessarily will be determined in light of the nature of the work involved, the working conditions and relationships, and the detail and credibility of the testimony'") (quoting, with approval, brief of Secretary of Labor), and Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 68 (2d Cir. 1997) ("depending on the nature of the facts to be proved, a very small sample of representational evidence can suffice")). In evaluating the adequacy of the representative proof Plaintiffs have presented, the focus is on whether the testimony is fairly representative of the larger group of employees including whether the duties of the testifying Plaintiffs are substantially

similar to those performed by the non-testifying Plaintiffs. See Morgan, 551 F.3d at 1279-80; Clark, 104 F. Supp. 3d at 831-32 ("In most cases where a small number of employees have been permitted to represent the interests of a larger number, the representative employee or employees performed substantially similar or identical work to the non-testifying employees.") (citations omitted). Courts generally consider factors such as the nature of the work involved, the working conditions and relationships, and the detail and credibility of the testimony. DeSisto, 929 F.2d at 793 (emphasizing quality of testimony over quantity). The "focus is not on the numbers in isolation but on whether the district court could reasonably conclude that there was 'sufficient evidence to show the amount and extent of ... [uncompensated] work as a matter of just and reasonable inference.'" Takacs, 1999 WL 33127976 at *2 (quoting Reich, 121 F.3d at 67-68, which quoted Mt. Clemens, 328 U.S. at 687).

Plaintiffs have disclosed twenty potential testifying trial witnesses whom they might call during Plaintiffs' case in chief, all of whom are either Named or Opt-in Plaintiffs. See McCoy Decl., ¶2, Ex. 1. Plaintiffs have yet to identify which twelve investigators they intend to actually call at trial. Id. at ¶3. Six of the twenty investigators on Plaintiffs' list of potential trial witnesses are currently employed by Defendant, while fourteen are former employees, even though the majority of the total class population are current employees. Nine of the twenty investigators are or were employed in California. Plaintiffs' plan does not appear to take into account the difference between California's definition of overtime and the federal wage and hour definition of overtime.

Defendant raises numerous concerns in addition to the lack of statistical significance, such as that the sample size is too small, the witnesses consist of only Named or Opt-in Plaintiffs, only six of the twenty investigators on Plaintiffs' list of potential trial witnesses are currently employed by Defendant even though the majority of the total class populations are current employees, and only nine of the twenty investigators are or were employed in California. Defendant notes that the overtime sample will have disproportionately fewer Senior Special Investigators, will have members who had managers who did not manage any of the other class members, and will have members who had longer tenures as special investigators than the other class members.

Declaration of Defendant's expert Daniel Slottje in support of Defendant's Reply ("Slottje Reply Decl.") ¶29-63. In addition, the witnesses in Plaintiffs' proposed sample do not cover all of the states where non-testifying class members worked, which can impact the number of business miles driven and may affect the amount of overtime.[2]

      Defendant especially takes issue with the fact that Plaintiffs' proposed sample is over-weighted as to former employees who worked a longer period of time than the average investigator because Defendant argues that these witnesses would likely materially overstate the number of hours worked. Dkt. No. 173 at 12. Another concern that Defendant raises is that the Plaintiffs have not justified how their proposed trial witnesses are representative of the California investigator's second meal break claim. Dkt. No. 173 at 5. Defendant notes that California investigators were only responsible for certain small areas of California whereas plaintiffs outside of California were responsible for significantly larger territories, and potentially, multiple states. Dkt. No. 173 at 9, n.11.

      Defendant may have legitimate concerns regarding the representativeness of the class. However, Defendant has yet to take the depositions of additional Opt-in depositions and absent class member depositions permitted by the court. See Dkt. No. 169. Thus, without the benefit of these additional depositions it is unclear to what extent any of Defendant's concerns may be valid. The parties should meet and confer regarding Plaintiffs' trial plan after Defendant has completed the additional depositions and discuss the relevant characteristics of the class and areas of concern regarding the representativeness of Plaintiffs' proposed sample, with the understanding that the law does not require Plaintiffs' proposed sample to meet a particular statistically significant threshold or be designed to generate results within a certain confidence level and margin of error. Plaintiffs should consider adding witnesses such as additional current employees, more recently hired employees, and witnesses that take into consideration variations related to driving times. Absent class members may potentially be called by Defendant after their depositions. Plaintiffs should be prepared to modify their trial plan to include additional witnesses to address

---

[2] The remoteness of work locations within class members' assigned territories may correlate better with driving time than the state.

Defendant's concerns regarding representativeness to the extent that these concerns are reasonable. Plaintiffs should identify exactly which individuals they intend to call at trial.

### B. Second Meal Break Claim

Defendant argues that Plaintiffs have failed to articulate in their trial plan how they will establish collective liability as to Plaintiffs' second meal break claim. Defendant also claims that Plaintiffs have not provided any evidence that their eventual trial witnesses would be representative as to all California class members. Plaintiffs do not directly address Defendant's argument in their opposition.

In the Court's ruling on the parties' cross-motions for summary judgment, the Court determined "disputed material facts exist as to whether Farmers provided a second meal break." Dkt. No. 152, 3:3- 4. This was because Defendant's meal and rest break policies either (1) applied to "all employees" (i.e., exempt and nonexempt) but only provided first meal breaks without mention of second meal breaks; or (2) only provided second meal breaks for nonexempt employees. Dkt. No. 69-3. Since one version of the break policy provides for a second meal break but it was not clear when and to whom this one policy applied, the Court denied Plaintiffs' motion for summary judgment on the second meal break claim. At this time, the Court declines to decertify the second meal break class but orders the parties to meet and confer regarding how Plaintiffs intend to establish collective liability on the second meal break claim and whether Plaintiffs' proposed trial witnesses are representative of all California class members.

### C. Uninjured Class Members

Defendant argues that Plaintiffs must have a mechanism to identify and exclude non-injured members from the judgment. Defendant relies, in part, on California case law that is not binding as to the federal claims here. See Dkt. No. 173 at 3-4. According to Plaintiffs, there is no evidence that any Plaintiff worked no overtime, although Defendant intends to take additional depositions. At this time, the Court declines to rule on whether such a mechanism is necessary and, if so, when non-injured members must be identified and excluded from judgment.

## IV. CONCLUSION

Trial courts are encouraged to be "procedurally innovative" in managing class actions.

Duran, 59 Cal. 4th at 33; accord Moore v. Ulta Salon, Cosmetics & Fragrance, Inc., 311 F.R.D. 590, 622 (C.D. Cal. 2015) ("the court has numerous efficient means to resolve [complex damages issues], including questionnaires, surveys, representative testimony, the use of a special master and other aggregate analysis.")  Although Plaintiffs' trial plan, in its current state, may not strike the appropriate balance, this does not warrant decertifying the class.  Rather, the parties are ordered to meet and confer regarding reasonable modifications to Plaintiffs' trial plan after Defendant has completed the additional opt-in depositions and absent class member depositions permitted by the Court, with the understanding that the law does not require the application of statistical principles to ensure representativity.  Plaintiffs should be prepared to identify exactly which individual witnesses they intend to call at trial.  Additionally, since this case only covers 78 individuals, the parties should consider whether a survey may be feasible as Defendant's expert suggests.  Slottje Decl. at ¶8.

The Court grants Plaintiffs' request to depose Defendant's expert Daniel Slottje in light of his new declaration submitted with Defendant's reply in support of the motion to decertify.  The Court further orders the parties to meet and confer regarding Plaintiffs' trial plan as it relates to the second meal break claim.

**IT IS SO ORDERED.**

Dated: September  11 , 2019

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge