1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID DELUCA, et al.,

　　　　　Plaintiffs,

　　v.

FARMERS INSURANCE EXCHANGE,

　　　　　Defendant.

Case No.  17-cv-00034-TSH

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS**

Re: Dkt. Nos. 216, 217

　　　　Before the Court are Plaintiffs' Motion for Attorneys' Fees and Costs and Motion for Final Approval of Class Settlement.  ECF Nos. 216, 217.  The Court finds this matter suitable for disposition without oral argument and **VACATES** the September 10, 2020 hearing.  *See* Civ. L.R. 7-1(b).  Having reviewed the Settlement Agreement and the Parties' arguments and papers, the Court **GRANTS** both motions.

## I.　　BACKGROUND

**A.　Facts**

　　　　Plaintiffs are former special investigators employed by Defendant Farmers Insurance Exchange ("Farmers").  ECF 146.  Farmers is an inter-insurance exchange that sells homeowners insurance, auto insurance, commercial insurance, and financial services throughout the United States.  First Am. Compl. ¶ 9, ECF No. 106.  Farmers employs special investigators to investigate potentially fraudulent insurance claims and assigns each investigator a set number of cases to investigate each month.  *Id.* ¶ 12.  Plaintiffs allege that while working for Farmers they routinely worked in excess of 40 hours per week, but because Farmers improperly classified them as employees who are "exempt" from the Fair Labor Standards Act ("FLSA") and state wage and

hour law, it did not pay them overtime compensation.  *Id.* ¶ 13.  They allege also that Farmers did not keep accurate records of hours worked by special investigators and never instructed investigators to keep such records themselves.  *Id.* ¶ 14.  As a result of the high volume of cases Farmers assigned to Plaintiffs, as well as time constraints which Farmers imposed, Plaintiffs also regularly worked through meal and rest periods.  *Id.* ¶ 15.

Plaintiffs bring claims for failure to pay overtime under the FLSA and California and New York law, failure to pay final wages and provide wage statements under the California Labor Code, violations of California meal and rest break law, violations of California Unfair Competition Law, and violations of the New York Wage Theft Prevention Act.[1]  They seek to represent a class of current or former special investigators.

On May 27, 2020, Plaintiffs filed their Motion for Preliminary Settlement Approval, ECF No. 212, which the Court granted on June 2, 2020, ECF No. 215.  The Court set the hearing on a motion for final approval for September 10, 2020.  Plaintiffs filed their motion for attorneys' fees on July 2, 2020, and their motion for final approval on August 3, 2020.  No Class members have filed objections to the Settlement Agreement.

**B.      Key Points of the Settlement Agreement**

The Settlement Class comprises:

> All persons who were or are employed by Defendant in the State of California as special investigators, senior special investigators, or general special investigators, other than those in the "Nationals" group, at any time within four (4) years prior to the date of the filing of this Complaint through February 27, 2018, the date class certification was granted.

Settlement Agreement ("SA") ¶ 4, ECF No. 217-2.

Farmers will pay a maximum settlement amount of $5,400,000.  *Id.* ¶ 3.  The SA contemplates payment to 78 Class members, including named Plaintiffs, after deducting attorneys' fees and costs, service awards, and Settlement administration costs.  *Id.* ¶¶ 2(A), 3; Decl. of Daniel Brome in Support of Mot. for Final Settlement Approval ("Brome Decl.") ¶ 2, ECF No. 217-1.

---

[1] Only Plaintiff Melissa Laughlin alleges a claim under New York state law.  SA ¶ 2(A).

United States District Court
Northern District of California

United States District Court
Northern District of California

Class Counsel ("Counsel") requests 30% ($1,620,000.00) of the total settlement amount in fees, $85,430.76 in costs, and $11,500 in administration costs.  Plaintiffs request $10,000 enhancement awards for the representative Plaintiffs Deluca and Francis, and $1,000 for each Class Member who was deposed during litigation.  SA ¶ 3.

After those deductions, the remaining settlement amount will be allocated *pro rata* based on Counsel's damage calculations, which are based on Farmers' payroll records, deposition testimony, and an estimate of hours worked by non-testifying Opt-in Plaintiffs and Class Members.  *Id.*; Brome Decl. ¶ 5.  The average allocation will be $46,929.09 per person, with the lowest allocation being $1,264.96.  *Id.* ¶ 6.

## II.    ANALYSIS

### A.    Final Settlement Approval

The Court may grant final approval of the Settlement once it determines that the proposed class meets the requirements for certification under Federal Rule of Civil Procedure 23, and that the Settlement reached on behalf of the class is fair, reasonable, and adequate.  The Court must also find that adequate notice has been given to the Class.

#### 1.    Class Certification

The Court conditionally certified Plaintiffs' FLSA claims on August 1, 2017 and certified a class of special investigators who worked for Farmers in California on February 27, 2018.  ECF Nos. 54, 87.

#### 2.    Notice

Under Federal Rule of Civil Procedure 23(e), "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Adequate notice is critical to the Court's approval.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  The Court previously approved the form, content, and distribution method of the Parties' FLSA Notice, Rule 23 Notice, and FLSA and Rule 23 Notice and found that the notice procedure would provide the best notice practicable.  ECF No. 215.  Notice was distributed to all FLSA Opt-in Plaintiffs and California Rule 23 Class Members on June 9, 2020, and none of the notices were returned as undeliverable.  Brome Decl. ¶ 3.  The Parties provided adequate notice to Class members.

United States District Court
Northern District of California

1

**3.    Whether the Settlement Is Fundamentally Fair, Adequate, and Reasonable**

2    A court may only approve a settlement if it finds that it is "fair, reasonable, and adequate."

3  Rule 23(e)(2).  The Ninth Circuit has long instructed district courts to consider and balance

4  multiple factors to assess whether a settlement is "fair, adequate, and free from collusion" under

5  Rule 23(e).  *Hanlon*, 150 F.3d at 1027.  These factors are:

6           the strength of the plaintiffs' case; the risk, expense, complexity, and
            likely duration of further litigation; the risk of maintaining class
7           action status throughout the trial; the amount offered in settlement;
            the extent of discovery completed and the stage of the proceedings;
8           the experience and views of counsel; the presence of a governmental
            participant; and the reaction of the class members to the proposed
9           settlement.

10  *Id.* at 1026.  "This list is not exclusive and different factors may predominate in different factual

11  contexts."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citation

12  omitted).  Also, recent amendments to Rule 23 established a uniform set of factors courts should

13  consider when determining whether a settlement is fair, reasonable, and adequate:

14           (A) the class representatives and class counsel have adequately
            represented the class;
15
            (B) the proposal was negotiated at arm's length;
16
            (C) the relief provided for the class is adequate, taking into account:
17
                (i) the costs, risks, and delay of trial and appeal;
18
                (ii) the effectiveness of any proposed method of distributing
19              relief to the class, including the method of processing class-
                member claims;
20
                (iii) the terms of any proposed award of attorney's fees,
21              including timing of payment; and
22
                (iv) any agreement required to be identified under Rule
23              23(e)(3); and

24           (D) the proposal treats class members equitably relative to each other.

25  Fed. R. Civ. P. 23(e)(2).  "The notes of the Advisory Committee explain that the enumerated,

26  specific factors added to Rule 23(e)(2) are not intended to 'displace' any factors currently used by

27  the courts, but instead aim to focus the court and attorneys on 'the core concerns of procedure and

28  substance that should guide the decision whether to approve the proposal.'"  *In re Extreme*

4

*Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *6 (July 22, 2019) (quoting Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2)).  "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)"—the fairness, reasonableness, and adequacy of the proposed settlement.  *In re Extreme Networks*, 2019 WL 3290770, at *6 (again quoting the advisory notes).  "[T]he underlying question remains this: Is the settlement fair?"  *Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig)*, 895 F.3d 597, 611 (9th Cir. 2018).

### a.    The Adequacy of Representation

The Parties have completed substantial written and oral discovery throughout the litigation, including having exchanged close to 10,000 pages of documents.  Brome Decl. ¶ 7.  Counsel have deposed 10 witnesses, including Farmers' expert and numerous managers and supervisors.  *Id.*  The litigation has been actively contested, and Counsel have frequently been successful.  They succeeded in, among other things, securing Rule 23 class certification over Farmers' opposition, obtaining over Farmers' opposition leave to amend their complaint to add a New York plaintiff along with claims under New York law, and obtaining summary judgment on several claims and issues.  *See* ECF Nos. 87, 105, 152.  And Counsel's firm, Nichols Kaster, LLP, has over 30 years of practice and focuses on advocating for employee and consumer rights.  Brome Decl. ¶ 8.  Furthermore, the representative Plaintiffs were actively involved in the litigation, providing information and assistance to counsel, providing documents, testifying at depositions, and participating in the settlement conference.  Decl. of Daniel Brome in Support of Mot. for Fees ("Fees Decl.") ¶ 6, ECF No. 216-1.  The Class representatives and Counsel have adequately represented the Class' interests.

### b.    Arms-Length Negotiations

The second factor under Rule 23(e)(2) requires the Court to consider if the Settlement was negotiated at arm's length.  Plaintiffs and Farmers negotiated assisted by Magistrate Judge Kandis A. Westmore.  Her oversight of the settlement negotiations provides a strong indication that those

United States District Court
Northern District of California

discussions were conducted at arm's length.  *In re Cylink Secs. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003); *see also* Fed. R. Civ. P. 23(e)(2)(B), Advisory Committee Notes ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *G.F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("'[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'") (quoting *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).  "The parties have also demonstrated that they have engaged in extensive discovery, providing both sides adequate opportunity to assess the pros and cons of settlement and further litigation."  *Cylink*, 274 F. Supp. 2d at 1112; *see Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").  There is every reason to believe that the Parties engaged in arms-length negotiations.

### c.       The Adequacy of the Relief

The Settlement commits Farmers to pay $5.4 million to settle this action.  No amount of the Settlement fund will revert to Farmers, with the residual Settlement amount to be donated in equal portions to *cy pres* beneficiaries.  SA ¶ 10.

Counsel estimate that the maximum total liability for all claims is $11,588,507.19.  Brome Decl. ¶ 5.  Accordingly, the Settlement amounts to approximately 46.6% of estimated total recovery.  A settlement amount of nearly 50% is a very good result.  Settlements amounts of far less than the amount here have been found adequate and fair by courts in this Circuit.  *E.g.*, *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) ('[T]he Settlement amount of almost $ 2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate.");  *Avila v. Cold Spring Granite Co.*, 2018 WL 400315, at *6 (E.D. Cal. Jan. 12, 2018) ("Excluding the highly uncertain PAGA penalties, the net settlement amount is roughly 16% of the more realistic maximum recovery amount.  That settlement amount is within the acceptable range, albeit at the low end.");  *Jones v. Canon Bus. Sols., Inc.*, 2014 WL 12772083, at *8 (C.D. Cal. Sept. 2, 2014) (settlement amount

representing a recovery of between 7 and 58% adequate); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement of approximately 15% found to be preliminarily fair).

Additionally, continued litigation in this matter would be risky.  Employment class actions "are, by their nature, time-consuming and expensive to litigate."  *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *3 (E.D. Cal. May 19, 2017) (citing *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015)).  Wage and hour trials are complex and expensive.  In this action, Defendant vigorously opposed class certification and if litigation continues Plaintiffs face a risk of class decertification.  *See* Mot. at 8 ("Defendant has made no secret of the fact that it agreed to this only for settlement purposes and intended to move to decertify the Rule 23 Class if litigation continued.").  Also, if Plaintiffs prevailed at trial, Defendants might appeal.  Accordingly, settlement is a quicker, cheaper, and, above all, guaranteed route to payment for Opt-in Plaintiffs and Class Members.

The amount of settlement, approaching 50% of estimated total recovery, viewed beside the risks inherent in continued litigation, is adequate for purposes of Rule 23.

### d.    Equitable Treatment of Class Members

The settlement allocation is fair and reasonable because it will be done *pro rata* based on damages calculations which were determined based on Farmers' payroll records and deposition testimony along with individualized calculations of overtime and other damages.  Brome Decl. ¶¶ 5, 7.  This method tracks what Opt-in Plaintiffs and Class Members would stand to receive if the case proceeded to trial and they obtained judgment in their favor.  *See, e.g.*, *Bisaccia v. Revel*, 2019 WL 861425 (N.D. Cal. Feb. 22, 2019) (granting preliminary approval where "settlement payments will be calculated proportionately based on individualized damages calculations using payroll data provided by Defendant").

Accordingly, because the Settlement satisfies the requirements of Rule 23(e) and is fair, reasonable, and adequate, the Court approves the Settlement.

### B.    Attorneys' Fees

Counsel, as authorized by the SA, ¶ 12, request approval for payment of 30% from the

Settlement amount, or $1,620,000.00, as payment for attorneys' fees.  Pursuant to the SA, any attorneys' fees or costs requested by Counsel but not approved by the Court shall revert to the Settlement fund for apportionment on a *pro rata* basis.  *Id.*  Counsel also requests $85,430.76 in costs, less than is authorized by the SA, SA ¶ 12; Fees Decl. ¶ 25; $11,500 in administration costs, less than is authorized by the SA, SA ¶ 9 ; Fees Decl. ¶ 27; $10,000 service payments to each of the initial named Plaintiffs; and $1,000 service payments to each of the twenty-six Opt-in Plaintiffs and Class Members who was deposed.

### 1.    Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  But in awarding attorneys' fees under Federal Rule of Civil Procedure 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 941, (9th Cir. 2011) (citations omitted).

In this Circuit, there are two primary methods used to calculate reasonable attorneys' fees: the lodestar method and the percentage-of-recovery method.  *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015) (citing *In re Bluetooth*, 654 F.3d at 941-42).  The lodestar figure represents a reasonable hourly fee multiplied by the number of hours reasonably expended on the litigation.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar figure is a presumptively reasonable fee.  *Clark v. City of L.A.*, 803 F.2d 987, 990-91 (9th Cir. 1986).  "Because the benefit to the class is easily quantified in common-fund settlements" such as this one, courts may alternatively "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."  *In re Bluetooth*, 654 F.3d at 942.  Applying the percentage-of-recovery calculation method, 25% of the fund is a benchmark for a reasonable fee award, and courts should provide adequate explanation of any special circumstances justifying a significant departure.  *Id.* (citations omitted).  In common fund cases, however, 20-30% is a customary range.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)

1   (The answer to the question of what percentage of a common fund is reasonable depends on the

2   individual circumstances of this case . . . .  Ordinarily, however, such fee awards range from 20

3   percent to 30 percent of the fund created.) (citation omitted))).  "The ultimate goal under either

4   method of determining fees is to reasonably compensate counsel for their efforts in creating the

5   common fund."  *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2,

6   2009).

7           Factors courts often consider in determining the reasonableness of a percentage-of-

8   recovery award include: (1) the results achieved; (2) the risk of continued litigation; (3) the skill

9   required and the quality of work; (4) the contingent nature of the fee and the financial burden

10  carried by counsel; (5) the reaction of the class; (6) awards made in similar cases; and (7)

11  comparison with the lodestar.  *Ross v. Bar None Enterprises, Inc.*, 2015 WL 1046117, at *8 (E.D.

12  Cal. Mar. 10, 2015) (citing *Vizcaino*, 290 F.3d at 1048-50); *Lusby v. Gamestop Inc.*, 2015 U.S.

13  Dist. LEXIS 42637, *8-9 (citing *Knight*, 2009 WL 248367, at *4).  "The overall result and benefit

14  to the class from the litigation is the most critical factor in granting a fee award."  *Knight*, 2009

15  WL 248367, at *5 (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June

16  10, 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (holding that the "most critical

17  factor is the degree of success obtained"))).

18          **2.      Analysis**

19                  **a.      Results Achieved and Risks of Continued Litigation**

20          Starting with the first two factors, the Court has already discussed how the Settlement

21  amounts to approximately 46.6% of estimated total recovery and will guarantee substantial relief

22  to Plaintiffs in the face of the significant costs and risks of continuing to litigate this matter.  These

23  two factors considered together thus weigh in favor of granting the requested 30% fee.  *See*

24  *Knight*, 2009 WL 248367, at *5 (finding results achieved weighed in favor of 30% fee where total

25  settlement award represented "at least 50% of the possible damages"); *In re Heritage Bond*, 2005

26  WL 1594403, at *8 (finding settlement fund which represented 36% of the class' total net loss to

27  be an "exceptional result").

28                  **b.      Skill Required and Quality of Work**

United States District Court
Northern District of California

9

1   Litigating this matter has required a high degree of skill and Counsel produced good

2   results.  "Complex class actions require unique legal skills and abilities."  *Zubia v. Shamrock*

3   *Foods Co.*, 2017 WL 10541431, at *17 (C.D. Cal. Dec. 21, 2017) (quoting *In re Omnivision*

4   *Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007)) (internal quotation marks omitted).  In this

5   case, Counsel have significant experience litigating class and collective wage and hour cases.

6   Fees Decl. ¶¶ 10-15.  The Parties have completed substantial discovery through written discovery

7   requests and responses and through a significant number of depositions.  *Id.* ¶ 2.  They have

8   exchanged close to 10,000 pages of documents.  *Id.*  And the sizeable recovery of 46.6% of

9   estimated total recovery is a testament to Counsel's skill.  This factor weighs in favor of the

10  requested fee.

11              **c.**       **Contingent Nature of the Fee**

12              "The importance of assuring adequate representation for plaintiffs who could not otherwise

13  afford competent attorneys justifies providing those attorneys who do accept matters on a

14  contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."  *In re*

15  *Omnivision Techs.*, 559 F. Supp. 2d at 1047 (citing *In re: Wash. Pub. Power Supply Sys. Secs.*

16  *Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994)).  Counsel spent upwards of 3,300 hours litigating

17  this case, did not receive any payment for their time spent, and did not receive reimbursement for

18  out-of-pocket costs incurred during the litigation.  Fees Decl. ¶¶ 9, 19.  "This substantial outlay,

19  when there [was] a risk that none of it [would] be recovered, further supports the award of the

20  requested fees."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.

21              **d.**       **Reaction of the Class**

22              The reaction of the Class has been unanimously positive.  Notice of the Settlement was

23  distributed to all Opt-in Plaintiffs and Class Members.  Brome Decl. ¶ 3.  All eligible individuals

24  are participating in the settlement.  *Id.* ¶ 4.  The Settlement Administrator has not received any

25  objections or requests for exclusion.  *Id.*  Each of the 37 FLSA Opt-in Plaintiffs returned the

26  required claim form.  *Id.*  This factor therefore supports an award of the requested fees.

27              **e.**       **Awards in Similar Cases**

28              Although 25% is the benchmark for a reasonable fee award, "in most common fund cases,

United States District Court
Northern District of California

10

the award exceeds that benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047 (citing *In re Activision Sec. Litigation*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("The 25% was given [by the Ninth Circuit] for guidance . . . . As documented by the lengthy list of cases below, this court finds that in most recent cases the benchmark is closer to 30%. . . . [A] figure of approximately 30% is substantially justified.")).  Courts in several cases have approved awards near or exceeding 30%.  *See, e.g.*, *Barbosa*, 297 F.R.D. at 450 (award of 33%); *Burden v. Selectquote Ins. Servs.*, 2013 U.S. Dist. LEXIS 109110, at *12-13 (N.D. Cal. Aug. 1, 2013) (same); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. June 1, 2010) (awarding 33.33%); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048 (other cases supported an award of 28% of the settlement fund); *In re Activision*, 723 F. Supp. at 1379 (awarding fees and expenses equaling 32.8%).  This factor also supports an award of the requested percentage.

### f.   Lodestar Cross-check

"As a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Knight*, 2009 WL 248367, at *7 (citing *Vizcaino*, 290 F.3d at 1050-51 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.")).  "Where a lodestar is merely being used as a cross-check, the court 'may use a rough calculation of the lodestar.'" *Aguilar*, 2017 WL 2214936, at *5 (quoting *Bond v. Ferguson Enters., Inc.*, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011)).

Counsel billed 3,344.9 hours at hourly rates of $175 for paralegals and other support staff, $425 for an associate attorney, and $475-625 for partner attorneys, for a total fee amount of $1,305,287.50 (not including fees related to the motion for fees).  Fees Decl. ¶¶ 7-14.  The requested fee amount is $1,600,000.  This represents a modest multiplier of approximately 1.24 times the lodestar.[2]  This multiplier is lower than commonly accepted lodestar multipliers and

---

[2] The Court finds the number of hours billed and rates billed by Counsel to be reasonable.  *See In re Walgreen Co. Wage & Hour Litigation*, 2014 WL 12853547, at *10 (C.D. Cal. Oct. 3, 2014) (9,441 hours were reasonable where case had been litigated for more than three years, and included multiple motions and "many hours preparing for mediation—which," like in this case, "included reviewing documents and interviewing Defendant's employees"); *Hightower*, 2015 WL 9664959, at *12 (6,636 hours reasonable where case was ongoing for more than four years and

supports approval of the requested fee amount.  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) ("In light of the results of this action, the contingent nature of class counsel's fee arrangement, and the skill required in conducting this litigation properly and succeeding at settlement, the Court believes that the 1.49 multiplier—at the low end of the Ninth Circuit's scale—is appropriate."); *Bower v. Cycle Gear, Inc*, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (approving 30% fees in wage and hour case resulting in multiplier of 1.37); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (approving $1,125,000 in fees—30% of settlement amount—in wage and hour case resulting in 2.26 multiplier); *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, at *8 (N.D. Cal. July 11, 2013) (approving 25% benchmark fees in overtime case resulting in a multiplier of 3.36).  Because the multiplier is well within the accepted range, the lodestar confirms that the requested fee amount is acceptable.

## C.   Litigation and Administration Costs

Counsel requests approval of $85,430.76 in litigation costs and $11,500 in administration costs.  The SA provides for up to $100,000 in costs and allows for up $14,000 in administration costs.  SA ¶¶ 9, 12.  Counsel's expenses include costs related to filing fees, postage, legal research, PACER, travel, administration costs for the collective, class, and settlement notices, transcripts for the many depositions, and mediation.  Brome Decl. ¶ 25.  The most significant expenses, $47,525.63, were for travel costs, much of which Counsel attributes to travel for the 38 depositions taken in this case.  *Id.*  These depositions also contributed to the substantial cost for transcripts, $27,528.63.  Mot. for Fees at 15.  The Settlement Administrator has quoted that the costs of administration should not exceed the $11,500 which Counsel has requested.  Brome Decl. ¶ 27.  Having reviewed the categories of costs and amounts attributed to each category, and considering that this litigation has been ongoing for nearly four years and Counsel have obtained

---

entailed considerable discovery); *Bisaccia*, 2019 WL 3220275, at *8 (finding as reasonable rates of $175 for clerks and paralegals, $425 for senior associates, and $625 to $675 for partners) (citing *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen*, 2017 WL 1047834, at *5 (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class")).

significant results and a substantial settlement amount, the Court finds the expenses are reasonable. *See, e.g.*, *Nelson v. Avon Prod., Inc.*, 2017 WL 733145, at *7 (N.D. Cal. Feb. 24, 2017) (approving $70,000 in costs for a settlement of $1,800,000, settled earlier in litigation). The Court approves the litigation and administration costs.

**D.      Service Payments**

Plaintiffs also request that the Court approve the service payments of $10,000 to each of the initially named Plaintiffs and the $1,000 to each of the Opt-In Plaintiffs and Class Members who was deposed.

Service awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted). The awards "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Bellinghausen*, 306 F.R.D. at 267. Courts evaluate service awards "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation and internal quotations omitted). "[C]ourts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen*, 306 F.R.D. at 26 (collecting cases).

As discussed earlier, named Plaintiffs Deluca and Francis have been actively involved in the litigation, providing significant information and assistance to Counsel. Additionally, the two Plaintiffs are agreeing to a general release of claims, as opposed to a narrower wage and hour release applicable to Opt-in Plaintiffs and Class Members. *See* SA ¶ 13. And since this is a wage-and-hour action, the two Plaintiffs faced a reputational risk in suing Farmers. These facts support

13

awarding the payments.  *See Noroma v. Home Point Financial Corp.*, 2019 WL 5788658, at *10 (N.D. Cal. Nov. 6, 2019) (awarding $10,000 incentive award where plaintiff was "actively involved" and "added substantial value" to case); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *4 (N.D. Cal. Oct. 18, 2019) (approving awards of $20,000 each for five named plaintiffs); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016) (approving a $15,000 service payment for a $3,750,000 total settlement, with an average award of $2,616, in part because class representative had a broader release of liability).  Also, the proportionality between the incentive payment and range of settlement awards is not unreasonable. "Courts weigh the proportionality between the incentive payment and the range of class members' settlement awards[] when considering whether a requested incentive award is reasonable." *Wilson v. Tesla, Inc.*, 2019 WL 2929988, at *15 (N.D. Cal. July 8, 2019) (citing *Lopez v. Bank of Am., N.A.*, 2015 WL 5064085, at *8 (N.D. Cal. Aug. 27, 2015) (collecting cases)).  In this case, the $10,000 service award payment is 0.19% of the $5,400,000 settlement, and substantially less than the average settlement payment of $46,410.  *See Hightower*, 2015 WL 9664959, at *13 (granting incentive awards and noting "the enhancement awards, which constitute 1.5% of the maximum settlement amount, do not significantly reduce the amount of settlement funds available to the rest of the class") (citation omitted).  The Court finds that the $10,000 service payments are reasonable under these circumstances and approves them.

Additionally, the $1,000 service payments for plaintiffs who were deposed are reasonable. The payment amounts are extremely small in relation to the total Settlement amount, representing collectively only 0.48% of the Settlement amount and only about 0.019% individually, meaning the incentive payments will not significantly reduce the amounts of funds available to the rest of the Class.  Also, Plaintiffs obtained Class certification and defeated Farmers' administrative exemption defense at summary judgment thanks in good part to deposition testimony.  Thus, the deposed Plaintiffs furthered the case significantly and the non-deposed Plaintiffs significantly benefitted from the depositions.  The Court will approve the $1,000 service payments.  *See, e.g.*, *Hightower*, 2015 WL 9664959, at *12 (approving $1,000 award for each class member who was deposed).

United States District Court
Northern District of California

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** final approval of the Settlement Agreement and **GRANTS** the Motion for Attorneys' Fees.  The Court **APPROVES** payment of 30% of the Settlement fund, equal to $1,620,000.00, for attorneys' fees; payment of $85,430.76 in costs; payment of $11,500.00 in Settlement administration costs; service payments of $10,000.00 each to named Plaintiffs Deluca and Francis; and service payments of $1,000.00 each to Plaintiffs and Class Members who were deposed, excepting named Plaintiffs.

The Court **ORDERS** the following:

1.      Defendant shall fund the Settlement Account in accordance with the terms of the Settlement Agreement, and the Settlement Administrator shall make Settlement payments, approved attorneys' fees and costs, and approved service payments in accordance with the terms of the Settlement Agreement.

2.      Plaintiff and all Class Members are bound by the release provisions contained in the Settlement Agreement.

3.      The Court retains continuing jurisdiction over: (a) implementation and enforcement of the Settlement Agreement pursuant to further orders of the Court, until such time as the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties hereto shall have been performed pursuant to the Settlement Agreement, including the payments from the Settlement Fund; (b) any other action necessary to conclude this settlement and implement the Settlement Agreement; (c) the enforcement, construction, and interpretation of the Settlement Agreement, including but not limited to, any disputes concerning Class Members' release of claims; and (d) the determination of validity of opt-outs, if called upon to make that judicial determination.

4.      The above-captioned action is **DISMISSED** on the merits and with prejudice, subject to the Court retaining jurisdiction to administer and enforce the Settlement Agreement as described above.  This dismissal is without costs to any party except as specifically provided in the Settlement Agreement.

**IT IS SO ORDERED.**

15

1

2   Dated: August 24, 2020

3

4   THOMAS S. HIXSON
    United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California